THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:10-CV-218-FL

| | | |
|---|---|---|
| BRIAN NANCE, | ) | |
| | ) | |
| Plaintiff/Claimant, | ) | |
| | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-14, DE-16] pursuant to Fed. R. Civ. P. 12(c). Claimant Brian Nance ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for child's insurance benefits based on disability and Supplemental Security Income ("SSI"). Claimant responded [DE-18] to Defendant's motion and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## STATEMENT OF THE CASE

Claimant filed applications for child's insurance benefits based on disability and SSI on 15 August 2006 and 15 September 2006, respectively, alleging disability beginning 2 March 2004. (R. 17). Both claims were denied initially and upon reconsideration. *Id.* A hearing before the

Administrative Law Judge ("ALJ") was held on 3 November 2008, at which Claimant was represented by counsel. (R. 484-95). On 12 February 2009, the ALJ issued a decision denying Claimant's request for benefits. (R. 14-25). Claimant then requested a review of the ALJ's decision by the Appeals Council, and submitted additional evidence as part of his request (R. 7). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on 9 September 2010. (R. 3-6). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ

2

analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(2), 416.920a(e)(2).

3

In this case, Claimant alleges the following errors by the ALJ: (1) finding that the severity of Claimant's mental impairment does not meet or equal the requirements of Listing 12.06; (2) improper assessment of Claimant's credibility; (3) improper assessment of Claimant's residual functional capacity ("RFC"); and (4) relying exclusively on the Medical-Vocational Guidelines listed in 20 C.F.R. § 404, Subpart P, Appendix 2 ("the Grids") in determining Claimant was capable of other employment existing in the national economy. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 11, 16, 20, 26.

## FACTUAL HISTORY

### I.    ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since 2 March 2004, the alleged disability onset date. (R. 19). Next, the ALJ determined Claimant had the following severe impairments: obsessive-compulsive disorder ("OCD"), depression and degenerative disc disease. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found Claimant experienced mild restrictions in activities of daily living, moderate difficulties in social functioning, mild difficulties with regard to concentration, persistence or pace and had experienced no episodes of decompensation. (R. 20).

4

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[1] involving simple, routine and repetitive tasks. (R. 21). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 22). Noting Claimant had no past relevant work, the ALJ proceeded to the final step and upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 24).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 22 years old and unemployed. (R. 487). Claimant has a high school education and has never worked. *Id.*

Claimant testified that he is unable to work due to chronic pain and OCD. (R. 487-88). Claimant is "unable to sit, stand, squat [or] test [his] strength without severe pain" and attributed his pain to injuries sustained in an ATV wreck in 2000. (R. 487, 491). Claimant testified everything he does is "consumed with the OCD" and that symptoms include having "[c]onstant numbers going through his head," repeating steps and tapping his foot before taking simple steps, such as turning on light switches. (R. 489). Claimant testified that his OCD symptoms arose following the death

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a); Soc. Sec. Ruling ("S.S.R.") 96-9p, 1996 SSR LEXIS 6, at *8, 1996 WL 374185, at *3. "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 SSR LEXIS 6, at *8-9, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. § 404, Subpt. P, App. 2, Table 1. *Id.*

5

of his brother in 2001. (R. 491). Claimant also experiences panic attacks, chest pain and headaches at times. (R. 490, 492). Claimant takes a variety of medications for both pain and OCD, including Remeron, Xanax, Methadone, Zoloft, Prilosec, Lunesta and Zanaflex. (R. 487-88). Claimant testified that this OCD medications help "some" but that his OCD is "not manageable." (R. 488).

Claimant spends a typical day watching television. (R. 489). Claimant testified that his mother sleeps with him at night because he experiences "severe nightmares." (R. 492). Claimant has no friends and stays at home with the exception of visiting his grandparents most Friday evenings. (R. 488). Claimant does not drive. (R. 493). Claimant stated that because of his OCD rituals, it takes him thirty to forty minutes to get dressed and that he only wears sandals because he must go through so many steps in order to tie his shoe laces. (R. 493). Claimant testified further that to leave the house, it takes him thirty minutes to get from his bedroom to the car and then an additional five minutes to get into the car. (R. 493-94). A vocational expert did not testify at the administrative hearing.

## DISCUSSION

I.     **Review of additional evidence submitted to the Appeals Council.**

In this case, Claimant submitted numerous additional medical records to the Appeals Council. On appeal, "[t]he Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b); *see also* 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1) (same). The Appeals Council need not, however, review nor consider new evidence that relates only to a time period after the ALJ issues his decision. *See* 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1) (stating that, on review, "[i]f [a claimant] submit[s] evidence which does not relate

6

to the period on or before the date of the [ALJ] hearing decision, the Appeals Council will return the additional evidence to [the claimant] with an explanation as to why it did not accept the additional evidence and will advise [the claimant] of [his/her] right to file a new application."). Here, the Appeals Council incorporated new evidence into the record but also returned records which it found related to a time period post-dating the ALJ's decision. (R. 4).

A.    Evidence incorporated into the record

The Appeals Council incorporated the following additional evidence into the record: (1) progress notes from Miriam Fernz, M.D., of Columbus Internal Medicine, dated 12 May 2008 through 23 January 2009 (R. 460-80); and (2) two lab reports from Spectrum Laboratory Network dated 5 September 2008 and 27 November 2008 (R. 481-483). Although the Appeals Council discounted the additional evidence, *see* (R. 4) (stating "this information does not provide a basis for changing the [ALJ's] decision"), the court must review this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y, Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (explaining where the Appeals Council incorporates additional evidence into the administrative record, the reviewing court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [ALJ's] findings"). However, at this stage, Claimant bears the burden of demonstrating that the additional evidence is (1) new, i.e., not duplicative or cumulative of that which is already in the record, (2) material, i.e., would have changed the outcome of the ALJ's decision; and (3) relates to the claimant's medical condition as it existed at the time of the ALJ's hearing decision. 20 C.F.R. §§ 404.970(b), 416.1470(b); *see Wilkins*, 953 F.2d at 96 (citations omitted); *see also Eason v. Astrue*, No. 2:07-CV-30-FL, 2008 U.S. Dist. LEXIS 66820, at *8, 2008 WL 4108084, at *3 (E.D.N.C. Aug. 29,

7

2008) (citing *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990)). In this case, the relevant time period extends from 2 March 2004 (Claimant's alleged disability onset date) to 12 February 2009 (the date of the ALJ's decision).

Upon review, the court finds the additional evidence immaterial as it would not have changed the outcome of the ALJ's decision. As for the May 2008 through January 2009 records from Dr. Fernz, Claimant's treating pain physician, the court finds the records immaterial in that they are cumulative. The additional evidence indicates that Claimant visited Dr. Fernz for routine checkups regarding complaints of joint and back pain (R. 460, 464, 467, 471) and anxiety and depression (R. 471) and for medication refills. In particular, Dr. Fernz' examinations of Claimant's psychiatric system were generally negative, while review of Claimant's musculoskeletal system generally indicated back pain, joint pain and myalgia (R. 460, 462, 464, 467, 469, 471, 473, 475, 477, 479) – similar findings documented in Dr. Fernz' medicals records submitted to the ALJ. (R. 168, 170, 172, 175, 177, 183, 185, 331, 335, 339, 329). The two laboratory reports simply provide numerical data regarding Claimant's metabolic panel, liver profile, thyroid panel, testosterone and phlebotomy charge (R. 481, 483) and provide no information impacting the ALJ's analysis of Claimant's impairments and symptoms thereof. Accordingly, this information is also immaterial.

B.     Evidence returned to Claimant

The Appeals Council returned several evidentiary items to Claimant because such evidence did "not affect the decision about whether [Claimant was] disabled beginning on or before February 12, 2009." This evidence includes (1) a medical report from David R. Allen, Jr., M.D., of Allen Orthopedics, P.A., dated 26 February 2009, Pl.'s Mem., Ex. 4 [DE-15.4], (2) a Comprehensive Clinical Assessment from Patricia Floyd, MSW, LCSW, dated 12 March 2009, *id.*, Ex. 2 [DE-15.2],

8

and (3) a statement of Ms. Floyd dated 3 August 2009, *id.*, Ex. 3 [DE-15.3].

1.  *Dr. Allen's February 2009 progress note*

Dr. Allen's treatment note imposed restrictions on Claimant due to pain in his neck, thoracic spine and low back. Pl.'s Mem., Ex. 4 [DE-15.4]. In particular, Dr. Allen limited Claimant to no lifting more than 25 pounds, no repetitive bending, no standing or walking more than 15 minutes at a time and no sitting more than 30 minutes at a time. *Id.* With the exception of citing this information in his statement of the facts, Claimant does not rely on this report nor does he explain how this treatment record relates to his condition during the relevant time period. Indeed, Dr. Allen's treatment record fails to place Claimant's neck, thoracic and back pain and resulting limitations therefrom in the relevant time frame as there is no reference to prior treatment records or to Claimant's condition on or before the ALJ's decision. As such, this court is unable to discern whether Dr. Allen relied on evidence in existence during the relevant time period reflecting Claimant's condition at that time. *See Wilkins*, 953 F.2d at 96; *Eason*, 2008 U.S. Dist. LEXIS 66820, at *8, 2008 WL 4108084, at *3. Accordingly, Dr. Allen's progress report is not material and the Appeals Council properly refused to incorporate this treatment note into the record. Because the records were not relevant to the time period on or before the ALJ's decision and were refused by the Appeals Council, Claimant's remaining remedy was his right to file a new application for benefits. *See* 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1).

2.  *Ms. Floyd's March 2009 Assessment*

The March 2009 assessment by Ms. Floyd denotes Claimant's chief complaints of OCD, PTSD and major depressive disorder and symptoms associated therewith, including obsessive thoughts and beliefs, compulsive behavior and recurrent nightmares, and documents, *inter alia*,

9

Claimant's developmental and social history. Pl.'s Mem., Ex. 2 [DE-15.2]. Findings by Ms. Floyd include: (1) no issues regarding "[o]ppositional/[a]ntisocial [b]ehavior" or impulsivity, inattention or disturbance in behavior; (2) "depression . . . its pretty bad;" (3) socially isolated but attends church occasionally; (4) performs activities of daily living; and (5) Claimant "will not leave his room or house unless accompanied by his mother." *Id.* In evaluating Claimant's mental status, Ms. Floyd found Claimant's attitude and behavior were age appropriate, his affect anxious, his thought form and content obsessive, his intellect average, his judgment, insight, attention and concentration adequate and that Claimant was oriented to person, place, time and situation. *Id.*

Ms. Floyd is neither a medical expert nor an "acceptable medical source," *see* 20 C.F.R. §§ 404.1513(a), 416.913(a); however, as a social worker, her opinion "may provide insight into the severity of Claimant's impairment and how it affects Claimant's ability to function." S.S.R. 06-03p, 2006 SSR LEXIS 4, at *5, 2006 WL 2329939, at *2. While the record indicates Ms. Floyd saw Claimant on 14 October 2008, *see* Pl.'s Mem. Ex. 1 [DE-15.1],[2] Ms. Floyd's March 2009 assessment does not mention the October 2008 report nor does it discuss any other treatment of Claimant prior to the ALJ's decision. Accordingly, the court finds that even if afforded its appropriate consideration, Ms. Floyd's assessment is immaterial as the court is unable to discern whether in reaching her findings in March 2009, Ms. Floyd relied on evidence in existence during the relevant time period thereby reflecting Claimant's condition at that time. *See Wilkins*, 953 F.2d at 96; *Eason*, 2008 U.S. Dist. LEXIS 66820, at *8, 2008 WL 4108084, at *3.

---

[2] Claimant contends Ms. Floyd's October 2008 report was submitted to the ALJ prior to the administrative hearing but was erroneously omitted from the administrative transcript – an allegation not disputed by Defendant. Pl.'s Mem. at 6.

3. *Ms. Floyd's August 2009 Opinion*

Ms. Floyd's August 2009 opinion indicates, *inter alia*, that Claimant has seen Ms. Floyd "at least eight times" since 14 October 2008, his OCD meets the criteria of Listing 12.06 (the listing for anxiety related disorders), and his depression has responded well to medication but his PTSD and OCD prevent Claimant from functioning adequately. Pl.'s Mem., Ex. 3 [DE-15.3]. In support of her Listing 12.06 opinion, Ms. Floyd states:

> [Claimant] [] has recurrent obsessions or compulsions which are a source of marked distress. Additionally, these obsessions and compulsions have resulted in an extreme difficulty in maintaining his activities of daily living. While [Claimant] can do basic things like maintain hygiene, he does not do much beyond that. [Claimant] spends most of the day in his bedroom, fearful that something terrible will happen if he leaves his bedroom. He will not leave his bedroom unless his mother is at home. [Claimant's] obsessions and compulsions also result in extreme difficulties in maintaining social functioning. [Claimant] will not leave the house without his mother and he has minimal contacts with others, such that I would describe him as socially isolated. I am of the opinion that [Claimant] has a complete inability to function independently outside the area of his home.
>
> . . . [Claimant] has recurrent and intrusive recollections of [abuse he experienced from his father], which are a source of marked distress. He has nightmares as well as an exaggerated startle response and he makes efforts to avoid thoughts, feelings, or conversations associated with the trauma as well as efforts to avoid activities, places or people that arouse recollections of the trauma.

*Id.* Ms. Floyd concludes that Claimant's PTSD and OCD difficulties "are of longstanding duration" and the "impairments and limitations [associated therewith] have been present for many years prior" to her first treating Claimant in October 2008. *Id.*

While referencing the October 2008 progress report, Ms. Floyd does not discuss any evidence during the relevant time period supporting her opinion. Indeed, the report is not accompanied by any medical evidence supporting Ms. Floyd's opinion that Claimant is incapable of working. However, the fact that Ms. Floyd stated that Claimant has been suffering from his mental impairments for many

11

years places the August 2009 opinion within the relevant time period. Furthermore, in reviewing Ms. Floyd's October 2008 progress note, the court observes that findings therein corroborate the statements contained within the August 2009 opinion. For example, both reports indicate that Claimant (1) suffers from and has undergone treatment for depression and OCD and experiences nightmares often, (2) will not leave his bedroom unless his mother his home and; and (3) is socially isolated as his activities are severely restricted by OCD. [DE-15.1, DE-15.3]. The October 2008 progress report indicates a Global Assessment of Functioning ("GAF")[3] score of 40, which indicates "[s]ome impairment in reality testing or communication . . . [or] major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood . . . ." DSM-IV at 32 (bold typeface omitted). This GAF finding offers support to Ms. Floyd's August 2009 opinion that Claimant suffers from extreme difficulty in maintaining social functioning. Accordingly, the court finds the August 2009 report relates to Claimant's medical condition on or before the ALJ's February 2009 decision and is not an opinion regarding a deterioration of Claimant's mental impairment subsequent to the ALJ's decision or a later-acquired disability requiring Claimant to file a new application for benefits. *See Rhodes v. Barnhart*, 2005 U.S. Dist. LEXIS 42876, at *33-34 (W.D.N.C. Mar. 30, 2005), *aff'd*, 176 Fed. Appx. 419 (4th Cir. Apr. 20, 2006) (new evidence must relate to the time period for which benefits were denied and may not merely be evidence of a later-acquired disability or of subsequent deterioration of the previously non-disabling condition) (citing *Raglin v. Massanari*, 39 Fed. Appx. 777, 779 (3d Cir. 2002)).

---

[3] The GAF scale ranges from zero to one-hundred and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV"), 32 (4th ed. 1994).

12

## II.    The ALJ's credibility determinations are not supported by substantial evidence.

Claimant contends the ALJ improperly evaluated Claimant's credibility regarding his OCD and depression and improperly rejected the statements of Claimant's mother. Pl.'s Mem. at 20, 23.

### A.    Evaluation of Claimant's credibility

Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of that pain, and the extent to which it affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3), 416.929(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See id.* at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, he "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 SSR LEXIS 4,

13

at *6, 1996 WL 374186, at *3.

Here, the ALJ considered Claimant's numerous subjective complaints, including those associated with his OCD such as Claimant's ritualistic behavior and panic attacks.[4] (R. 22). The ALJ found that Claimant had medically determinable impairments reasonably capable of causing Claimant's subjective symptoms but concluded Claimant's subjective complaints were not fully credible. *Id.* In reaching this conclusion, the ALJ reasoned as follows: (1) the lack of emergency treatment or inpatient hospitalization; and (2) the lack of regular treatment. *Id.* Claimant avers that the ALJ failed to (1) properly credit the medical evidence documenting Claimant's obsessions and social isolation and (2) address Claimant's activities of daily living, the frequency or intensity of his symptoms or the factors that aggravate Claimant's mental impairment in violation of S.S.R. 96-7p. Pl.'s Mem. at 21. As for evidence documenting Claimant's obsessions and social isolation, Claimant relies on RFC assessments performed by state agency non-examining consultants W. H. Perkins, Ph.D., and Eleanor Cruise, Ph.D., an evaluation performed by William Link, Ph.D, a state agency examining consultant, and treatment records by Ms. Floyd. Pl.'s Mem. at 18, 22.

In determining Claimant's mental RFC, Drs. Perkins and Cruise rated numerous mental activities, found in Section 1-Summary Conclusions of the mental RFC ("MRFC") form. (R. 152, 297). To the extent Claimant contends the findings therein, including that Claimant is "markedly limited" in his ability to interact appropriately with the general public, represent Claimant's RFC and thus support Claimant's testimony concerning his social interactions, Claimant is mistaken. As the SSA's Program Operations Manual System ("POMS") instructs,

---

[4] Claimant's credibility argument is limited to Claimant's mental impairment; thus, the court does not discuss the ALJ's credibility determination regarding Claimant's DDD.

14

Section I [of the MRFC form] is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment . . . . Section III - Functional Capacity Assessment[] is for recording the mental RFC determination. It is in this section that the actual mental RFC assessment is recorded, *explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings.*

POMS § DI 24510.060(B)(2)(a) & (4)(a), http://policy.ssa.gov/poms.nsf/lnx/0424510060 (last visited Sept. 20, 2011) (boldface omitted) (emphasis added); *see also Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 U.S. Dist. LEXIS 45523, at *37 n.7, 2011 WL 1599679, at *11 n.7 (E.D.N.C. Mar. 23, 2011) (noting "the severity ratings found in . . . Section 1 of the MRFC form do not equate to a mental RFC assessment"), adopted, 2011 U.S. Dist. LEXIS 45580, 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011). After rating Claimant's mental activities, both Drs. Perkins and Cruise found Claimant capable of working. In particular, Dr. Perkins noted that while Claimant's obsessive, compulsive features "serve to diminish his effectiveness somewhat," Claimant is nevertheless capable of performing simple, routine work activities "which are not pressured, fast-paced or highly public in nature." (R. 298). Dr. Cruise found that "[o]nce accustomed to a low stress work situation with low social demands, [Claimant] would be capable of [simple, routine and repetitive tasks]." (R. 153). The ALJ accorded both assessments "significant weight," finding them "generally consistent with the other evidence of record." (R. 24). Claimant suggests that the weight afforded these opinions means that the ALJ should have found Claimant limited to "low stress work" and "low social demands." Pl.'s Mem. at 18-19. Assuming *arguendo* that such limitations should have been included in Claimant's RFC, the findings by Drs. Perkins and Cruise nevertheless do not support Claimant's contention that he "is effectively paralyzed and housebound," "limited in his ability to leave the house without his mother," or "so limited in his ability to finish ordinary, simple

15

tasks that he is unable to perform any substantial gainful activity." Pl.'s Mem. at 19, 22.

With respect to the evaluation by Dr. Link, Claimant relies on Dr. Link's opinion that Claimant's agoraphobic and OCD tendencies appear to "rise to the level that he could not handle the intricacies of social interactions in a work setting." *Id.* at 17; (R. 305).[5] The ALJ accorded this observation "minimal weight," finding it unsupported by the weight of the medical evidence of record and noting further that Dr. Link evaluated Claimant on only one occasion and did not have the benefit of a longitudinal treating relationship with Claimant. (R. 24). The ALJ does not identify the nature of the inconsistency between Dr. Link's statement and other evidence of record. While Defendant points to records from Dr. Fernz in support of the ALJ's consideration of Dr. Link's opinion, *see* Def.'s Mem. at 12; (R. 168-86, 327-42), the ALJ's decision neither cites nor discusses Dr. Fernz' medical records. *See Shoulars v. Astrue*, 671 F. Supp. 2d 801, 818 (E.D.N.C. 2009) (explaining this court must "judge the propriety of the [ALJ's determination] solely by the grounds invoked by the [ALJ]") (quoting *SEC v. Chenery Corp.* 332 U.S. 194, 196 (1947) (noting a court may not substitute its own reasoning for that of the agency)).

Claimant, however, argues Dr. Link's opinion as to Claimant's social functioning is supported by Ms. Floyd's October 2008 assessment. Pl.'s Mem. at 22. In the assessment, Ms. Floyd noted, *inter alia*, that Claimant's primary care physician recommended Claimant undergo therapy for his depression and OCD, that Claimant's activities were "severely restricted" by his obsessive and compulsive behaviors and that Claimant had a GAF score of 40.[6] Pl.'s Mem., Ex. 1 at 1, 3 [DE-

---

[5] A duplicate copy of Dr. Link's psychological evaluation appears in the record at R. 308-12.

[6] As noted previously, a GAF of 40 indicates "[s]ome impairment in reality testing or communication . . . [or] major impairment in several areas, such as work or school, family relations, judgment, thinking or mood . . . ." *See* DSM-IV at 32 (bold typeface omitted).

16

15.1]. The court agrees that Ms. Floyd's assessment supports Dr. Link's opinion. The ALJ, however, failed to discuss Ms. Floyd's October 2008 report which undermines the ALJ's credibility discussion. *See Ivey v. Barnhart*, 393 F. Supp. 2d 387, 390 (E.D.N.C. 2005) (remand is appropriate where ALJ fails to discuss relevant evidence weighing against his decision) (citing *Murphy v. Bowen*, 810 F.2d 433, 438 (4th Cir. 1987)). The court notes further that Ms. Floyd's August 2009 opinion – which was not before the ALJ – indicates Claimant has undergone treatment for OCD "at least eight times" since the October 2008 evaluation for OCD. [DE-15.3]. Accordingly, the ALJ's decision to discount Claimant's testimony in part on the finding that "the record does not document that the claimant has required regular treatment" for his mental impairment is not supported by substantial evidence. (R. 22).

Finally, Claimant contends that had the ALJ properly evaluated Claimant's activities of daily living, the frequency or intensity of his symptoms or the factors that aggravate Claimant's mental impairment, the ALJ

> would have found [Claimant's] activities of daily living to be extremely constricted and . . . that even minor tasks such as answering the telephone cause[] stress and that activities such as tying his shoes or turning off a light switch involve[] extensive rituals with numbers such that he could not complete such activities in a normal span of time.

Pl.'s Mem. at 23. In considering Claimant's testimony, the ALJ noted that Claimant "has numbers constantly in his head," "checks the light switch multiple times," and that "OCD affects everything he does." (R. 22). The ALJ noted further Claimant's testimony that he spends a typical day watching television and does not like to go anywhere alone. *Id.* However, it is unclear from the ALJ's decision what evidence he relied on that undermined this testimony. Claimant's ritualistic behaviors are documented in Dr. Link's evaluation who noted Claimant suffers from "a pattern of obsessive

17

behaviors," including "obsess[ing] on numbers in order to gain control over his life," (R. 304-05) as well as Ms. Floyd's October 2008 evaluation who noted Claimant counts numbers because of a belief that "something bad" will happen if he does not do so. Pl.'s Mem., Exs. 1, 3 [DE-15.1, 15.3]. Dr. Link found that as a result of Claimant's ritualistic behaviors, he "could not handle the intricacies of social interactions in a work setting" (R. 305) and Ms. Floyd attributed such behaviors to Claimant's increased social isolation [DE-15.1].

The court finds that the reasons for discounting Claimant's testimony – lack of support by objective medical evidence and the lack of regular treatment – are either unexplained or not accurately presented. Accordingly, the court cannot find that the ALJ's credibility finding is supported by substantial evidence. *See Ivey*, 393 F. Supp. 2d at 390.

B.    Evaluation of Third Party Function Report

Claimant contends that the ALJ (1) improperly dismissed Ms. Nance's statements based on her personal relationship with Claimant and (2) failed to identify the evidence contradicting Ms. Nance's statements. Pl.'s Mem. at 24. Defendant does not discuss this assignment of error.

On 20 October 2006 and 15 July 2007, Claimant's mother, Betsy Nance, completed a "Function Report-Adult-Third Party" concerning, among other things, how Claimant's OCD affects his daily activities and social functioning. In the October 2006 report, Ms. Nance indicated that she spends most of each day with Claimant "making sure he eats [and] takes his medication." (R. 108). Ms. Nance also provided the following information: (1) Claimant no longer participates in activities such as hunting or fishing, does not socialize with friends and "tries to take [his dog] out at least once a day;" (2) Claimant's chores are limited to taking out the trash and letting his dog outside; (3) Claimant accompanies his mother to the grocery store on a weekly basis; (4) Claimant is capable of

18

paying bills, counting change and handling a savings account; and (5) Claimant spends the day watching television. (R. 109-12). Ms. Nance explained Claimant's mental impairments affect his memory and concentration due to the repeated steps he takes, cause him to live "in a total state of fear [and] anxiety," and leave him "totally exhausted." (R. 113-15).

In the July 2007 report, Ms. Nance's responses indicate a worsening of Claimant's condition. In particular, Ms. Nance noted the following: (1) she must lie down with Claimant at night so that he feels safe and should Claimant awaken in the middle of the night and Ms. Nance is not present, Claimant suffers a panic attack; (2) Ms. Nance lays out Claimant's clothes each day as Claimant's OCD prevents him from making such decisions; (3) Claimant requires reminders to bathe, brush his teeth, change his clothes and take his medicine; (4) Claimant is incapable of handling household chores because his "mind is always occupied with numbers [and] repeated steps;" and (5) Claimant no longer shops and can no longer handle his personal finances. (R. 71-74). Ms. Nance indicated also that Claimant's symptoms associated with OCD, including constant counting in his head and taking repeated steps, make it "impossible [for Claimant] to complete tasks, concentrate, follow instructions or get[] along with others." (R. 76).

The ALJ accorded Ms. Nance's statements "minimal weight," noting first that her statements were "inconsistent with the claimant's presentation upon routine examination and his ability to engage in [] activities of daily living." (R. 21). The court is unclear as to the "routine examinations" upon which the ALJ relies. The statements by Claimant's mother are at least partially corroborated by evaluations performed by Dr. Link and Ms. Floyd. Given an alleged inconsistency between Dr. Link's opinion and the "medical evidence of record" not readily apparent to the court as well as the lack of discussion of Ms. Floyd's October 2008 treatment record, the court finds the ALJ's credibility

19

finding as to Ms. Nance's statement is not supported by substantial evidence.

Furthermore, in evaluating Ms. Nance's statement, ALJ erroneously relied on Ms. Nance's relationship with Claimant. In particular, the ALJ noted "that due to [Ms. Nance's] personal relationship with the claimant, [she] may be motivated to help the claimant in his attempt to gain disability benefits by making as strong a recommendation as possible." (R. 21-22). The mere fact that Claimant's mother is a family member is not a sufficient reason to reject her statements. As stated in 20 C.F.R. §§ 404.1513(d) and 416.913(d), the Social Security Administration will, "in addition to evidence from the acceptable medical sources . . . also use evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects [his] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d). Such other sources include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Thus, lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis constitutes evidence that the ALJ must consider. *Morgan v. Barnhart*, 142 Fed. Appx. 716, 731 (4th Cir. 2005) (explaining "descriptions of friends and family members who [are] in a position to observe the claimant's symptoms and daily activities [are] routinely accepted as competent evidence") (quoting *Behymer v. Apfel*, 45 F. Supp. 2d 654, 663 (N.D. Ind. 1999)) (alterations added). To reject lay testimony, an ALJ must give reasons "germane to each witness" for doing so. *Morgan*, 142 Fed. Appx. at 731 (quoting *Regennitter v. Comm. of the Social Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999)) (noting claimant's mother's testimony, explaining that such lay testimony "provides an important source of information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness")). Thus, the ALJ's discounting of Ms. Nance's statements based on her personal relationship with Claimant does not

20

qualify as a reason germane to her. *See Morgan*, 142 Fed. Appx. at 731 (citing *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996)) ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value [–] such lay witnesses will often be family members.").

## III.    The ALJ's finding that Claimant's impairments did not meet or equal Listing 12.06 is not supported by substantial evidence.

Claimant argues that the ALJ erred by finding that his impairments do not meet or equal Listing 12.06, the listing for anxiety related disorders. Pl.'s Mem. at 11.

To establish the required severity of Listing 12.06, Claimant must show that he meets the criteria listed in both sections "A" and "B," or the requirements of section "C." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06. The ALJ did not discuss the section "A" criteria of Listing 12.06 and found that the evidence fails to establish the presence of the "C" criteria. (R. 21). The court assumes the "A" criteria is met in light of the ALJ's finding that Claimant suffers from OCD and depression and the fact that the parties focus solely on whether the section "B" criteria is met. Accordingly, the court limits its discussion to section "B" criteria. Section "B" under Listing 12.06 requires that the section "A" disorder result in at least two of the following:

1.    Marked restriction of activities of daily living;
2.    Marked difficulties in maintaining social functioning;
3.    Marked difficulties in maintaining concentration, persistence, or pace; or
4.    Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06.

Here, the ALJ found Claimant had mild restrictions in activities of daily living, noting Claimant spent his day watching television and caring for his dog and was capable of attending to his personal hygiene. (R. 20). The ALJ acknowledged however that Claimant "does not like to leave

21

his home during the day." *Id.* The ALJ found Claimant experienced moderate difficulties in social functioning, noting that while medical records indicated Claimant was polite and cooperative during examinations, Dr. Link found Claimant "could possibly have difficulty with social interaction." (R. 20, 305). The ALJ found further that Claimant had only mild difficulties with concentration, persistence or pace and relied on Dr. Link's examination results indicating Claimant was able to "recall 3/5 objects after five minutes, recall 7 digits forward and 4 in reverse, calculate serial 3's and perform money calculations." (R. 20, 304). Finally, the ALJ found Claimant had experienced no episodes of decompensation.[7] (R. 20).

Claimant contends he is markedly limited in activities of daily living, in social functioning and in concentration, persistence or pace. Pl.'s Mem. at 13-15. In support of his position, Claimant relies on his testimony, statements by his mother (R. 71-79, 108-15), Dr. Link's consultative examination (R. 302-06), and Ms. Floyd's August 2009 opinion (Pl.'s Mem., Ex. 3). *Id.*[8] In two "Function Report Adult - Third Party" questionnaires, Claimant's mother reported that Claimant is generally unable to be apart from her and cannot complete ordinary tasks due to Claimant's ritualistic behavior. Pl.'s Mem. at 15; (R. 71, 73, 110, 489). In Ms. Floyd's opinion, she explains that Claimant's recurrent obsessions and compulsions have resulted in "extreme difficulty in maintaining

_____

[7] The ALJ cited no evidence within his step three discussion with the exception of Dr. Link's psychological evaluation and Claimant's testimony regarding his activities of daily living. Rather, the ALJ's analysis regarding Claimant's mental impairments is found within the ALJ's RFC discussion. *See Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 U.S. Dist. LEXIS 13893, at *7-8, 2009 WL 455414, at *3 (E.D.N.C. Feb. 23, 2009) (explaining although "[s]uch collapsing of the analysis of the evidence by an ALJ is not the preferred form of opinion writing for an ALJ because it makes review of his opinions more difficult, [] it is not necessarily reversible error") (citation omitted).

[8] Claimant also cites Ms. Floyd's March 2009 treatment record; however, as explained above, the court is unable to discern whether Ms. Floyd relied on evidence in existence during the relevant time period reflecting Claimant's condition at that time.

22

his social activities of daily living," noting Claimant is basically limited to maintaining hygiene only., and "extreme difficulties in maintaining social functioning," noting Claimant will not leave his home without his mother. Pl.'s Mem., Ex. 3 [DE-15.3]. Ms. Floyd concludes that Claimant's mental impairments meet the criteria for Listing 12.06. *Id.* Dr. Link found Claimant has the capacity to focus and sustain his focus on simple, repetitive tasks but "could not handle the intricacies of social interactions in a work setting." (R. 169). Dr. Link made no findings as to Claimant's activities of daily living.

Defendant argues the record fails to sustain the testimony of Claimant and his mother that Claimant "is utterly incapable of performing tasks without his mother's assistance" or that Claimant's "OCD rituals preclude [him] from leaving the house or performing simple tasks." Def.'s Mem. at 10. In support of this argument, Defendant relies on the assessments by state agency non-examining consultants, Drs. Perkins and Cruise, who found Claimant's impairments did not meet Listing 12.06, and an evaluation by Anne Dibala, M.D., with Evergreen Behavioral Management, Inc., who found Claimant had full memory for recent, remote and immediate events.[9] Def.'s Mem. at 10; (R. 142, 287, 320). Defendant argues further that Ms. Floyd's opinion is a "statement of disability" – an issue reserved to the Commissioner. *Id.*; *see* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); S.S.R. 96-5p, 1996 SSR LEXIS 2, at *5,1996 WL 374183, at *2 (explaining statements concerning an individual's inability to work are reserved to the Commissioner).

---

[9] Defendant also relies on the following evidence: (1) September 2005 intake record from Evergreen Behavioral Management, Inc. (R. 272-77); and (2) progress records from Dr. Fernz (R. 331-40; 460-80). However, the ALJ's decision does not indicate that the ALJ, in making his Listing 12.06 finding, specifically relied on this evidence. *See Shoulars*, 671 F. Supp. 2d at 818.

Claimant contends Defendant's reliance on the assessments by Drs. Perkins and Cruise is error in light of the fact that both examiners concluded Claimant experienced <u>moderate</u> restrictions in activities of daily living. Pl.'s Resp. 5. Arguing he is "*at least as* limited as [Drs. Perkins and Cruise] found him to be [with respect to this functional limitation]," *id.* (emphasis in original), Claimant contends the ALJ's step-three finding to the contrary "is not supported by substantial evidence." *Id.* However, even if the ALJ erroneously failed to adopt the findings of the state examiners as to this functional limitation, such error is harmless as Listing 12.06 requires a finding of <u>marked</u> limitation in at least two of the four functional limitations evaluated by Drs. Perkins and Cruise in their Psychiatric Review Technique forms. *See Currie v. Astrue*, No. 7:09-CV-73-BO, 2010 U.S. Dist. LEXIS 87233, at *4 (E.D.N.C. Aug. 21, 2010) (finding the ALJ's failure to inquire about an inconsistency in the record as "harmless error because no substantive inconsistency existed") (citations omitted). Accordingly, this alleged error would have no substantive impact on the ALJ's step-three finding.

As for Ms. Floyd's August 2009 opinion, however, while statements concerning an individual's inability to work are reserved to the Commissioner, such statements must nevertheless be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); S.S.R. 96-5p, 1996 SSR LEXIS 2, at *5,1996 WL 374183, at *2 (explaining "our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner"). Furthermore, as a social worker, Ms. Floyd's opinion "may provide insight into the severity of Claimant's impairment and how it affects Claimant's ability to function." S.S.R. 06-03p, 2006 SSR LEXIS 4, at *5, 2006 WL 2329939, at *2.

24

Here, Ms. Floyd's August 2009 opinion is at least partially supported by her October 2008 treatment record – evidence ignored by the ALJ – as well as Dr. Link's assessment. *See Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000) (explaining the ALJ "cannot 'pick and choose' only the evidence that supports his position"); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("In addition to discussing the evidence supporting his decision in a social security disability benefits case, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

The court finds that Ms. Floyd's October 2008 and August 2009 opinions constitute probative evidence that must be considered, especially in light of their support of the statements made by Ms. Nance – statements discounted by the ALJ for reasons not readily apparent to the court. Accordingly, the court cannot find that the ALJ's step three finding is supported by substantial evidence.

Because this court finds that remand on the issue of credibility will affect the remaining issues raised by Claimant, it does not address those arguments.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-14] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-16] be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District

Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 20th day of September, 2011.

Robert B. Jones, Jr.
United States Magistrate Judge

.